FILED

2019 Aug-05 PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE U.S. DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TIM AND DAPHNE TERRY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NUMBER:** |
| | ) | |
| | ) | _____ |
| | ) | |
| **NEWREZ, LLC, D/B/A** | ) | |
| **SHELLPOINT MORTGAGE** | ) | |
| **SERVICING AND RUBIN** | ) | |
| **LUBLIN, LLC,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Tim and Daphne Terry ("Plaintiffs") files this complaint against NewRez, LLC, doing business as Shellpoint Mortgage Servicing ("Shellpoint") and Rubin Lublin, LLC ("Rubin, Lublin") (collectively "Defendants"), for violation of the Fair Debt Collection Practices Act, violation of the Real Estate Settlement Procedures Act, breach of contract, promissory estoppel, defamation, invasion of privacy, unjust enrichment, and declaratory judgment.

In support thereof, Plaintiffs allege as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1.　　Plaintiffs Tim and Daphne Terry are natural persons residing in Cullman County, Alabama.

2.      Defendant NewRez, LLC, doing business as Shellpoint Mortgage Servicing ("Shellpoint") is a Delaware limited liability company with its principal place of business at 4000 Chemical Road, Suite 200, Plymouth Meeting, Pennsylvania 19642.

3.      Defendant Rubin Lublin, LLC ("Rubin Lublin") is a Georgia limited liability company with its principal place of business at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, Georgia 30071.

4.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 because it arises under a federal statutes, including 15 U.S.C. §1692 and 12 U.S.C. 2605.  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

5.      This Court has personal jurisdiction over Defendants Shellpoint and Rubin Lublin because the events that are the basis of this lawsuit occurred in Alabama.

6.      Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

7.      Plaintiffs are "consumers" within the meaning of that term under 15 U.S.C. §1692a(3).

8.      Shellpoint is a mortgage servicer.   On information and belief, Shellpoint is engaged in the business of collecting mortgage debts incurred, or alleged to be incurred, for personal, family, or household purposes on behalf of the owners of those debts.

9.      Shellpoint regularly obtains loans that are in default at the time of transfer of servicing rights to Shellpoint.

10.     Shellpoint is a "debt collector" within the meaning of that term under 15 U.S.C. §1692a(6).

11,     Rubin Lublin is a law firm engaged in the business of regularly collecting debts incurred, or alleged to be incurred, for personal, family, or household purposes on behalf of the owners of those debts.

12.     Rubin Lublin regularly attempts to collect on debts that are in default.

13.     Rubin Lublin is a "debt collector" within the meaning of that term under 15 U.S.C. §1692a(6).

14.     In or around 2002, Plaintiffs purchased their home at 532 County Road 796, Cullman, Alabama.

15.     In connection with their home purchase, Plaintiffs took out a mortgage loan from ABN AMRO Bank.

16.     On or about March 25, 2013, Plaintiffs filed for a Chapter 13 bankruptcy in the United States District Court for the Northern District of

Alabama.  Their case was styled *In re: Tim and Daphne Terry*, Case No. 13-80901-CRJ13.

17.   Plaintiffs' mortgage debt was scheduled in their bankruptcy.

18.   Under Plaintiffs' Chapter 13 plan, the amounts that Plaintiffs owed to cure their pre-bankruptcy-petition mortgage arrearage ("Pre-Petition Arrearage") were paid by the trustee appointed by the bankruptcy court.  The Chapter 13 plan provided that Plaintiffs would pay their post-petition-mortgage payments directly rather than through the bankruptcy trustee.

19.   As of May 8, 2017, Plaintiff's monthly mortgage payment was $1,439.65.

20.   On or about June 16, 2017, Shellpoint became the new mortgage servicer for the Plaintiff's mortgage loan.

21.   Plaintiff's mortgage loan was in default at the time, based on both pre-petition and post-petition arrearages.

22.   On or about September 18, 2017, Shellpoint filed a Motion for Relief from the Automatic Stay in Plaintiffs' bankruptcy case.  A true and correct copy of Shellpoint's Motion is attached hereto as Exhibit ("Ex.") A.

23.    Shellpoint's Motion sought to foreclose on Plaintiffs' mortgage on the grounds that Plaintiffs had fallen behind on their post-bankruptcy-petition mortgage payments. Ex. A.

24.    In support of its Motion, Shellpoint provided the affidavit of Shellpoint employee Sherry Goodson, who attested under oath that Plaintiff were in arrears in their post-petition mortgage payments in the amount of $9,756.98. This amount was comprised of $8,725.98 in past due monthly mortgage payments and fees, plus an additional $1,031 in attorney's fees.  Ex. A.

25.    Shellpoint's claim for $1,031 in attorney's fees was disallowed by the bankruptcy court pursuant to the Northern District of Alabama's standing rule that no attorney's fees may be assessed if the Plaintiff has no equity in the property, reducing the amount of Plaintiffs' post-petition arrearage on their mortgage [after crediting funds in escrow] to $8,725.98.

26.    Between October and December of 2017, in addition to making their regular monthly mortgage payments, Plaintiffs cured the arrearage in their post-petition payments.  Plaintiffs' payments to Shellpoint in this timeframe were as follows:

| Amount paid by Terrys | Purpose of Payment | Date Terrys sent check | Date Shellpoint cashed check |
|---|---|---|---|
| $1,439.65 | October 2017 Mortgage Payment | October 1, 2017 | December 5,2017 |
| $2,908.66 | One-Third of Shellpoint's Allowed Post-Petition Arrearage Claim | October 13, 2017 | October 24, 2017 |
| $1,439.65 | November 2017 Mortgage Payment | November 1, 2017 | December 5, 2017 |

| $2,908.66 | One-third of Shellpoint's Allowed Post-Petition Arrearage Claim | November 10, 2017 | November 28, 2017 |
| --- | --- | --- | --- |
| $1,439.65 | December 2017 Mortgage Payment | December 1, 2017 | December 5, 2017 |
| $2,908.66 | One-third of Shellpoint's Allowed Post-Petition Arrearage Claim | December 4, 2017 | December 19, 2017 |

27.     Plaintiffs made the additional $8,725.98 in payments to Shellpoint as alleged in paragraph 26 in reliance on Shellpoint's sworn representation and agreement that the amount of post-petition monthly mortgage payments and fees in arrears was $8,725.98. *See* Ex. A.

28.     On December 18, 2017, the Bankruptcy Court denied Shellpoint's Motion for Relief from the Automatic Stay based on the Plaintiffs' cure of their post-petition mortgage arrearage.

29.     After curing the arrearage in their post-petition mortgage payments, Plaintiffs continued to timely make their monthly mortgage payment, including their monthly payments in January, February, March, and April of 2018.

30.     On March 5, 2018, the trustee in Plaintiffs' bankruptcy case filed a notice of final cure with the Bankruptcy Court, confirming that Plaintiffs had cured the pre-bankruptcy petition arrearage in mortgage payments as well.

31.     On or about March 6, 2018, the Bankruptcy Court discharged the Plaintiffs upon the successful completion of their Chapter 13 plan.

32.     On March 26, 2018, Shellpoint filed a response to the Trustee's March 5, 2018 notice of final cure.  Shellpoint now asserted that Plaintiffs were in arrears on their post-petition mortgage payments in the amount of $12,453.54.

33.     Shellpoint's filing included a ledger ("March 26, 2018 Ledger") that purported to reflect what Shellpoint claimed were the post-petition mortgage payments it had received from Plaintiffs.  A true and correct copy of Shellpoint's March 26 filing and ledger is attached hereto as Exhibit B.

34.     Shellpoint, however, made no attempt to explain the inconsistency between its sworn September 18, 2017 statement that Plaintiffs' had a post-petition arrearage [minus disallowed attorney's fees and crediting funds in escrow] of $8,725.98, *which Plaintiffs subsequently cured with its payments between October and December 2017*, and its March 26, 2018 claim that the Plaintiffs now had a post-petition arrearage of $12,453.54.  Nor did Shellpoint otherwise attempt to provide any basis for the new post-petition arrearage amount it claimed.  *See* Ex. B.

35.     On or about March 26 and April 18, 2018, Shellpoint returned Plaintiffs' March and April 2018 mortgage payments without cashing their checks. Shellpoint's correspondence asserted that Plaintiffs' checks were being returned

because Plaintiffs were more than ninety (90) days past-due in their post-petition payments and "not in an active workout" with Shellpoint.  Shellpoint ignored the fact that the Plaintiffs had in fact cured their post-petition arrearage between October and December of 2017.

36.    On or about May 11, 2018, Plaintiffs' bankruptcy attorney contacted Shellpoint by telephone and notified it of its mistake in calculating the Plaintiffs' post-petition arrearage.  Plaintiffs' bankruptcy counsel further confirmed Plaintiffs were ready and willing to perform on their mortgage.

37.    That same day, Plaintiffs' attorney sent correspondence to Shellpoint again notifying it of its error.  Plaintiffs' letter enclosed a copy of the September 18, 2017 affidavit that Shellpoint had filed in the Plaintiff's bankruptcy proceeding regarding the amount of the post-petition arrearage and copies of the checks that Shellpoint had received and cashed, curing that post-petition arrearage.  A true and correct copy of this correspondence [without attachments[1]] is attached hereto as Ex. C.

38.    Plaintiffs' correspondence again confirmed that Plaintiffs were ready and willing to pay their mortgage and asked that Shellpoint review the matter and get back to him to discuss as soon as possible.  Ex. C.

_____

[1] Plaintiffs have omitted the attachments from this filing because they contain confidential personal information, including bank account information.  The attachments will be provided to defendant's counsel upon request and filed with the Court upon entry of an order protecting the confidential personal information from public disclosure.

39.     Shellpoint never responded to this correspondence.

40.     Instead, on or about November 2, 2018, Shellpoint sent correspondence to Plaintiffs' attorney claiming that Plaintiffs were in default and threatening to accelerate their mortgage.

41.     On or about April 26, 2019, the law firm of Rubin Lublin sent a notice of acceleration and foreclosure by certified mail.  Rubin Lublin threatened to conduct a foreclosure sale of Plaintiffs' residence.

42.     Rubin Lublin mailed the notice directly to Plaintiffs despite its knowledge that they were represented by counsel.

43.     Thereafter, on multiple occasions, including but not limited to May 17, 2019, Shellpoint and/or Rubin Lublin caused a notice to be published in The Cullman Times, a publication of general circulation in Cullman County, Alabama, falsely asserting that Plaintiffs were in default on their mortgage and that Shellpoint would be foreclosing on the property.

44.     Defendants' publication failed to disclose that any failure by Plaintiffs to pay their mortgage was the result of Shellpoint's incorrect calculation of the amount due and subsequent refusal to accept Plaintiffs' payments.

45.     On or about May 24, 2019, Plaintiffs sent a written notice of error /qualified written request ("NOE/QWR") to Shellpoint pursuant the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, *et seq.*, and its implementing

regulations at 12 C.F.R. §§1024.35-36.  A true and correct copy of this notice of error/qualified written request [without attachments] is attached hereto as Exhibit D.

46.    On or about June 12, 2019, Shellpoint responded to Plaintiffs' NOE/QWR, denying that it had made any error in the servicing of Plaintiffs' mortgage loan and again asserting that Plaintiffs were more than 90 days past due when it began refusing their payments.  A true and correct copy of Shellpoint's June 12, 2019 Response and Ledger is attached hereto as Exhibit E.

47.    Shellpoint's letter acknowledges that it is acting as a debt collector and that its letter is an attempt to collect a debt.  Ex. E.

48.    Shellpoint's correspondence also included a new ledger identifying what Shellpoint claimed were the post-petition mortgage payments it had received from Plaintiffs.  Ex. E ("June 12, 2019 Ledger").

49.    Shellpoint's June 12, 2019 response continues to fail to address the inconsistency between September 18, 2017 sworn representation/promise as to the amount of Plaintiffs' post-petition arrearage and the $12,453.54 amount that Shellpoint started trying to claim in March of 2018.

50.    Moreover, the June 12, 2019 Ledger of Plaintiffs' alleged post-petition payments that Shellpoint included with its Response to Plaintiffs' NOE/QWR reflects multiple inconsistencies with the March 26, 2018 Ledger that

Shellpoint submitted in its filing to the Bankruptcy Court, including the omission of multiple payments that Shellpoint had previously admitted receiving from Plaintiffs. Compare Ex. B [Shellpoint March 26, 2018 ledger submitted to bankruptcy court] with Ex. E [Shellpoint June 12, 2019 ledger prepared in response to May 24, 2019 NOE/QWR].

51.     Shellpoint failed to conduct a reasonable investigation in responding to Plaintiffs' May 24, 2019 NOE/QWR, as confirmed by the inconsistencies between its June 12, 2019 and March 26, 2018 Ledgers, failed to include the information requested in Plaintiffs' NOE/QWR, and/or failed to cure Shellpoint's error.

52.     Shellpoint does not have accurate internal records of the payments received from Plaintiffs. Shellpoint's inaccurate records regarding Plaintiffs is consistent with a pattern and practice by Shellpoint of mishandling loans transferred from other servicers.

53.     Plaintiffs have been harmed by Shellpoint's failure to fix the errors identified in Plaintiffs' NOE/QWR. Among other things, Plaintiffs have subsequently been forced to incur additional expense as a result of Shellpoint inadequate investigation and deficient response to their NOE/QWR, including attorneys' fees and other costs.

54.     In addition, Plaintiffs have been deprived of funds by Shellpoint's failure to correct its error and properly credit their account, have fallen further behind in their mortgage as a result of Shellpoint's continuing failure to resolve this issue and refusal of their monthly mortgage payments, have suffered the imposition of additional fees, and have suffered additional stress and mental anguish as a result of being forced to file this litigation, having Shellpoint's threats of foreclosure hanging over them, and continuing to face financial ruin despite their attempt to obtain a fresh start through the successful completion of their Chapter 13 bankruptcy.

55.     Moreover, Plaintiffs do not owe the debt claimed by Shellpoint and/or Rubin Lublin or do not owe the amounts claimed.

56.     Plaintiffs have been damaged as a result of Defendants' wrongful acts and omissions described above.  Those damages include, but are not limited to, the invasion and interference with Plaintiffs' right to be free from abusive debt collection practices, causing Plaintiffs anger, anxiety, fear, and other mental anguish, various costs and expenses incurred as a result of or in response to the Defendants' wrongful acts, including costs, and being deprived of the financial fresh start they attempted to obtain through the successful completion of their Chapter 13 bankruptcy.

57.     At all times pertinent to the allegations of this Complaint, Defendants acted by and through their duly authorized agents, employers, servants, attorneys, or other legal representatives, all of whom acted within the line and scope of such agency, employment, service, or representative capacity.   Alternatively, the Defendants adopted, affirmed, and /or ratified the acts or omissions of their agents, servants, employees, attorneys, or legal representatives as its own with regard to the allegations of this complaint.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. §1692 *ET SEQ.*

### (Both Defendants)

58.     Defendants used false, deceptive, and misleading representations in an attempt to collect a purported debt from Plaintiff.   Those misrepresentations include, but are not limited to: (1) that Plaintiffs were in arrears in their post-petition mortgage debt, (2) that Plaintiffs were in arrears in their post-petition debts in the amount(s) claimed by Defendants, (3) that Plaintiffs were in default under their mortgage based on the failure to payoff their post-petition mortgage arrearage, (4) that Defendants were legally entitled to accelerate Plaintiffs' mortgage debt and/or foreclosure despite the fact any default  was the result of Defendants' misrepresentations and/or other wrongful conduct, and/or (5) claiming

that Plaintiffs had not made certain payments despite the fact those payments had been received by Defendant Shellpoint and were reflected in its records.

59.    The Defendants' conduct identified above violated the applicable provisions of the FDCPA, including 15 U.S.C. §1692e.

60.    Defendants used unfair and/or unconscionable means in an attempt to collect the alleged debt from Plaintiff.  Defendants' unfair and/or unconscionable means include, but are not limited to: (1) attempting to collect a debt that was not owed, (2) attempting to collect an amount that was not owed, (3) refusing Plaintiffs' monthly mortgage payments based on false and inaccurate information and then using their improper refusal to accept those payments to purportedly accelerate the loan and attempt to foreclose on Plaintiffs' property, (4) failing to respond to Plaintiff when provided documentation explaining Defendant Shellpoint's error and instead attempting to accelerate the loan and foreclose, (5) publishing false and/or misleading information about Plaintiffs in their community, (6) threatening to take nonjudicial action to effect dispossession of property when there was no present right to possession of the property through an enforceable security interest, and/or (7) threatening to take nonjudicial action to effect dispossession of the property when the property is exempt by law from such dispossession.

14

61.     Defendant's conduct identified above violated the applicable provisions of the FDCPA, including 15 U.S.C. §1692f.

62.     In addition to the foregoing, Defendant Rubin Lublin violated 15 U.S.C. §1692c(2) by contacting Plaintiffs directly in connection with its collection efforts when Defendants knew Plaintiffs were represented by counsel.

63.     Defendants' violations detailed above were done intentionally and with knowledge.

64.     As a result of the defendants' violations of the FDCPA, Plaintiff has been damaged as described above.  Plaintiff is entitled to statutory damages, actual damages, and all costs and reasonable attorney's fee pursuant to the relevant provisions of the FDCPA.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

### [Shellpoint Mortgage Servicing]

65.     Shellpoint is a servicer within the meaning of 12 U.S.C. 2605(i)(2).

66.     Plaintiffs' loan with Shellpoint is a federally related mortgage loan.

67.     Plaintiffs' May 24, 2019 letter was a Qualified Written Requests and notice of error within the meaning of 12 U.S.C. §2605(e)(B), 12 C.F.R. §1024.35, and 12 C.F.R. §1024.36.

68.     Shellpoint breached its obligations under 12 U.S.C. §2605(e)(B) in responding to these NOE/QWRs.   Among other things, it failed to conduct a reasonable investigation of Plaintiffs' notice of error, failed to either make the appropriate corrections on Plaintiffs' account within thirty business days of receipt and failed to provide an explanation of its reasons why its account was correct.

69.     Shellpoint's actions and omissions, including those described above, violated Plaintiffs' rights under 12 U.S.C. §2605.

70.     Shellpoint committed multiple violations in responding to Plaintiffs' NOE/QWR, including failing to conduct a reasonable investigation, failing to cure, and failing to either provide the information requested or explain that the information was unavailable.

71.      Plaintiffs have suffered actual damage as a result of these violations as more particularly described above.

72.     On information and belief, Shellpoint has a pattern and practice of failing to investigate errors reported by borrowers, and/or mishandling loans after those loans are transferred from other servicers such as Plaintiffs, and/or claiming debts after they have been discharged in bankruptcy.

73.      On information and belief, for example, Shellpoint settled similar allegations of misconduct asserted by the State of Massachusetts in violation of state law in 2018.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT/PROMISSORY ESTOPPEL
## /EQUITABLE ESTOPPEL

[Shellpoint Mortgage Servicing]

74.     Shellpoint's September 2017 statement of the amount due and Plaintiffs' acceptance of that statement and payment of the amounts claimed constitutes a contract as to the post-petition arrearage.

75.     Shellpoint breached that contract by claiming additional amounts due after Plaintiffs paid the amounts agreed.

76.     Plaintiffs have been damaged as a result.

77.     In the alternative, Shellpoint's September 2017 statement constituted a promise and/or representation as to the amount of the post-petition arrearage owed by Plaintiffs.

78.     In the alternative, Shellpoint's September 2017 statement of the amount due became res judicata and/or collateral estoppel when the bankruptcy court ruled on that claim, discharged Plaintiffs after the successful completion of their Chapter 13 plan, and dismissed the bankruptcy case.

79.     When Shellpoint communicated this information, Shellpoint was aware of the true amounts due.

80.    Plaintiffs relied on Shellpoint's representation/promise.  Among other things, Plaintiffs paid the arrearage amount claimed between October and December of 2017 in an effort to cure the arrearage.

81.    Plaintiffs' payment of the additional amounts during the course of their bankruptcy proceeding and while making their regular mortgage payments, their Chapter 13 payments, and their other regular expenses, constituted a substantial burden but Plaintiffs incurred this burden in belief that it would bring their mortgage current.

82.    A substantial injustice would occur if Shellpoint were permitted to represent the amounts of the post-petition arrearage, have Plaintiffs rely on that amount and pay it over to Shellpoint in an effort to save their home, and Shellpoint were then allowed to renege on its promise and take Plaintiffs' home.

## FOURTH CAUSE OF ACTION
## DEFAMATION

[Both Defendants]

83.    The Defendants published false, libelous, and defamatory statements concerning Plaintiffs, including false statements concerning their payment of debts, in the Cullman Times.

84.    The Defendants did so maliciously, with knowledge of their falsity, and/or with wanton and reckless disregard for the truth or falsity of their statements.

85.    Plaintiffs have been damaged as a result, including harm to his reputation among her peers and in his community, with Plaintiff's employer, loss of potential business, and such other damages as described above.

## FIFTH CAUSE OF ACTION
## INVASION OF PRIVACY

### [Both Defendants]

86.    Defendants' conduct as alleged above, including its publication regarding Plaintiffs in the Cullman Times, have painted Plaintiffs in a false light in the public eye.

87.    The false information that Defendants published about Plaintiffs in the Cullman Times was communicated to so many persons in Plaintiffs' community to ensure that it would become one of general public knowledge.

88.    Defendants actions in placing Plaintiffs in a false light in the public eye were made with either knowledge of, or wanton and reckless disregard, as to the falsity of the publicized matter and the false light in which Plaintiffs would be placed.

89.    Plaintiffs have been have been damaged by Defendants' invasion of their privacy, including, but not limited to, those damages described above.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT

### [Shellpoint Mortgage Servicing]

90.     Plaintiffs have made payments to Shellpoint that it has kept but failed to properly credit.

91.     Defendant Shellpoint has been unjustly enriched as a result.

92.     In the alternative, Plaintiffs made payments to Shellpoint in reliance on its representation as to the amount due.  Shellpoint has retained those payments but failed to credit Plaintiffs for curing their post-petition arrearage and subsequently refused to accept their payments and sought to foreclose on Plaintiffs.

93.     Shellpoint has been unjustly enriched by its conduct as described above.

## SEVENTH CAUSE OF ACTION
## DECLARATORY AND INJUNCTIVE JUDGMENT

### [Both Defendants]

94.     Defendants currently claim an arrearage in excess of $34,000. This is the direct result of Shellpoint's mistaken and improper claim that there was a post-petition arrearage after the bankruptcy court determined it was cured and then improper refusal to accept Plaintiffs' monthly mortgage payments.

95.     Plaintiffs seek declaratory and injunctive relief that (1) there was no post-petition arrearage in March of 2018 as determined by the bankruptcy court,

(2) that it was improper for Defendants to claim that there was a post-petition arrearage after it was cured and then refuse Plaintiffs' monthly mortgage payments, and (3) the amounts refused between March of 2018 and the date Shellpoint begins to accept payments are either waived or can be paid at the end of the mortgage.

96.     Defendant Shellpoint has purported to exercise or threatens to exercise the due on sale clause in Plaintiffs' mortgage based on the deficiency created by Shellpoint's wrongful conduct.

97.     Under Alabama law, a court has equitable jurisdiction over the exercise of a due on sale clause and may enjoin enforcement of such clauses where it would be unconscionable or inequitable to exercise such clauses.  *See In re: Parks*, 193 B.R. 361 (Bankr. N.D. Ala. 1995); *Powell v. Phenix Federal Savings and Loan Assoc.*, 434 So.2d 247 (Ala. 1983).

98.     Plaintiffs seek declaratory relief that Shellpoint's exercise of the due on sale clause based on its own misconduct would be inequitable and an order enjoining Shellpoint from exercising that provision of the mortgage based upon its miscalculation of the amounts due on the mortgage.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, awarding the following relief:

A.     Actual, compensatory and consequential damages, including mental anguish damages, in such an amount as the trier of fact determines;

21

B.    Statutory damages pursuant to 15 U.S.C. §1692 *et seq.*;

C.    Punitive damages in such amount as the trier of fact determines;

D.    Such interest as allowed by law;

E.    The costs of this suit, including plaintiff's reasonable attorney's fee;

F.    Declaratory judgment injunctive relief that the amount of the post-petition arrearage was the amount stated in Shellpoint's September 2017 bankruptcy filing minus the attorney's fees disallowed in the bankruptcy court and injunctive relief prohibiting Defendant Shellpoint from exercising the due-on-sale clause in the Terrys' mortgage; and,

G.    Such additional relief as the Court deems just and equitable.

Respectfully submitted,

*/s/ Matt Carroll*
One of the Attorneys for Plaintiffs
Tim and Daphne Terry.

**OF COUNSEL:**

F. Inge Johnstone
Matt Carroll
JOHNSTONE CARROLL LLC
One Independence Plaza Drive, Suite 520
Homewood, Alabama 35209
Telephone:  205-383-1372

**JURY DEMAND**

PLAINTIFFS DEMAND TRIAL BY STRUCK JURY FOR ALL CLAIMS SO TRIABLE.

*/s/ Matt Carroll*
One of the Attorneys for Plaintiffs