FILED

2019 Nov-12  AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE U.S. DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TIM AND DAPHNE TERRY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NUMBER:** |
| | ) | |
| | ) | **5:19-CV-01246-LCB** |
| | ) | |
| **NEWREZ, LLC, D/B/A** | ) | |
| **SHELLPOINT MORTGAGE** | ) | |
| **SERVICING AND RUBIN** | ) | |
| **LUBLIN, LLC,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendants.** | ) | |

### FIRST AMENDED COMPLAINT

Plaintiff Tim and Daphne Terry ("Plaintiffs") file this amended complaint against NewRez, LLC, doing business as Shellpoint Mortgage Servicing ("Shellpoint") and Rubin Lublin, LLC ("Rubin, Lublin") (collectively "Defendants"), for violation of the Fair Debt Collection Practices Act, violation of the Real Estate Settlement Procedures Act, breach of contract, promissory estoppel, defamation, invasion of privacy, unjust enrichment, and declaratory judgment.

In support thereof, Plaintiffs allege as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Tim and Daphne Terry are natural persons residing in Cullman County, Alabama.

2.     Defendant NewRez, LLC, doing business as Shellpoint Mortgage Servicing ("Shellpoint") is a Delaware limited liability company with its principal place of business at 4000 Chemical Road, Suite 200, Plymouth Meeting, Pennsylvania 19642.

3.     Defendant Rubin Lublin, LLC ("Rubin Lublin") is a Georgia limited liability company with its principal place of business at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, Georgia 30071.

4.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 because it arises under a federal statutes, including 15 U.S.C. §1692 and 12 U.S.C. 2605.  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

5.     This Court has personal jurisdiction over Defendants Shellpoint and Rubin Lublin because the events that are the basis of this lawsuit occurred in Alabama.

6.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

7.     Plaintiffs are "consumers" within the meaning of that term under 15 U.S.C. §1692a(3).

8.      Shellpoint is a mortgage servicer.   On information and belief, Shellpoint is engaged in the business of collecting mortgage debts incurred, or alleged to be incurred, for personal, family, or household purposes on behalf of the owners of those debts.

9.      Shellpoint regularly obtains the servicing rights on loans that are in default at the time of transfer to Shellpoint and subsequently attempts to collect on those defaulted loans.

10.     On information and belief, Shellpoint obtains the servicing rights on loans that are in default in excess of 500 times a year.

11.     The Terrys' mortgage loan was in default at the time Shellpoint assumed the servicing rights.

12.     Shellpoint is a "debt collector" within the meaning of that term under 15 U.S.C. §1692a(6).

13.     Rubin Lublin is a law firm engaged in the business of regularly collecting debts incurred, or alleged to be incurred, for personal, family, or household purposes on behalf of the owners of those debts.  In particular, Rubin Lublin's regularly attempts to collect on debts secured by residential mortgages on behalf of mortgage servicers who receive assignment of those debts while in default.

14.     On information and belief, Rubin Lublin uses a standard form letter in attempting to collect on mortgage debts.   The standard letter, styled "***Notice of Acceleration and Foreclosure***" ("***Notice of Acceleration***"), includes language that is the same or similar to the following statement:

> The indebtedness secured by said Mortgage has been and is hereby declared due because of default under the terms of said Mortgage and Note.  ***The total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges. To find out the amount needed to either bring the Loan current or pay off the Loan in full, please call 800-365-7107.***

Exhibit ("Ex.") A [April 26, 2019 Rubin Lublin ***Notice of Acceleration***] (emphasis in original); *see also Barber v. Rubin Lublin*, C.A. No. 1:13-CV-975-TWT, 2013 WL 6795158,*10 (N.D. Ga. Dec. 20, 2013) (observing similar language in another Rubin Lublin dunning letter).

15.     In a separate paragraphs, Rubin Lublin's ***Notice of Acceleration*** advises:

> Should the FDCPA apply, please be advised that this firm is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Ex. A, p. 2 (emphasis in original).

> THE BELOW LAW FIRM MAY BE HELD TO BE ACTING AS A DEBT COLLECTOR, UNDER FEDERAL LAW.   IF SO, ANY INFORMATION OBTANIED   WILL   BE   USED   FOR   THAT PURPOSE.

Ex. A , p. 3.

16.     Rubin Lublin also includes the date of an alleged foreclosure sale in its letter. Ex. A, p. 1.

17.     Rubin Lublin's *"Notice of Acceleration"* is not sent in a good faith attempt to comply with Alabama statutes governing foreclosure.  Alabama state law imposes no requirement that any notice be provided directly to the mortgagor prior to a non-judicial foreclosure. *See* Ala. Code [1975] §35-10-13.

18.     Nor is Rubin Lublin's *"Notice of Acceleration"* letter required to comply with the terms of the mortgage.  The mortgage servicer mails any notice of acceleration potentially required by the mortgage contract before referring the matter to Rubin Lublin.

19.     Instead, the reason Rubin Lublin sends out its *"Notice of Acceleration and Foreclosure"*, with the language quoted above regarding the indebtedness, is in effort to collect the balance due on the mortgage debt from the borrower.

20.     As the United States District Court for the Northern District of Georgia explained when considering a similar Notice of Acceleration letter:

> Plaintiff argues that Defendant's "notices of acceleration to Plaintiff contained standard language, demanding full and immediate payment of the debt, while simultaneously threatening foreclosure." . . . Plaintiff argues that such notices can constitute debt collection activity under applicable Eleventh Circuit precedent.  The Court agrees. *See Reese*, 678 F.3d at 1217-1218; *see also Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579, 582-83 (11th Cir. 2012). . . .
>
> Reading the allegations most favorably to Plaintiff, a factfinder could infer that **Defendant's notice of default, acceleration, and threat to**

**foreclosure was at least in part an attempt to collect the balance due. A foreclosure threat coupled with a notification of default and acceleration on the debt sends a two-part message: do nothing and you will lose your house; pay what you owe and you can keep your house; pay what you owe and you can keep it. This qualifies as debt collection**, at least at the pleading state of the case. Plaintiffs' allegations thus fulfill the element of debt collection activity.

*Jean Pierre v. Home America Mortgage, Inc.*, C.A. No. 1:13-CV-1777-ODE-JSA, 2014 WL 12857984, *9 (N.D. Ga. Jan. 22, 2014) (internal citations omitted) (emphasis added)

21.    To the extent Rubin Lublin's letter contains additional information and/or disclaimers, that language is overshadowed by the statements on the first page and/or creates confusion, such that the average consumer would understand the letter to be an attempt to collect on a debt. *See* Ex. A [***Notice of Acceleration***].

22.    Rubin Lublin's "***Notice of Acceleration***" letter serves a dual purpose within the meaning of *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012) and attempts to collect a debt. *See Jean Pierre v. Home America Mortgage, Inc.*, C.A. No. 1:13-CV-1777-ODE-JSA, 2014 WL 12857984, *9 (N.D. Ga. Jan. 22, 2014) (internal citations omitted); *Barber v. Rubin Lublin*, C.A. No. 1:13-CV-975-TWT, 2013 WL 6795158,*10 (N.D. Ga. Dec. 20, 2013) (finding that a similar Rubin Lublin letter was an attempt to collect on a debt).

23.    Rubin Lublin's website, which may be found at the web address https://rlselaw.com, describes its business as specializing in "closings, mortgage

compliance, mortgage default, loss mitigation, bankruptcy, landlord/tenant and all facets of real estate and title litigation" in the states of Georgia, Alabama, Mississippi, and Tennessee. *See* https:rlselaw.com.

24.     Rubin Lublin's website also contains a page that specifically advertises its foreclosure practice as follows:

> **Foreclosure**
>
> We perform both residential and commercial foreclosures in Georgia, Tennessee, Mississippi and Alabama with tailored representation for the largest national servicers and banks all the way down to individual investors.
>
> We generally employ a nonjudicial method of foreclosure, and if provided with sufficient information at referral, we can bring a property all the way to sale in 40-60 days.

Ex. B [printout of Rubin Lublin Foreclosure website page, which may also be found at on the internet at the following address:  https://rlselaw.com/practice-areas/default-lender-services/foreclosure.].

25.     Moreover, a review of the cases filed by Rubin Lublin attorneys reflect the vast majority of lawsuits they file in the state of Alabama are cases seeking to enforce nonjudicial foreclosures against residential home owners through ejectment actions.

26.     For example, of the approximately 28 active cases pending in the state courts of Alabama as of September 10, 2019, in which Rubin Lublin attorney Timothy Pittman represented a party, at least 19 (or 67%) were actions in which

Rubin Lublin was seeking to eject a residential homeowner from their home following an alleged nonjudicial foreclosure.

27. A review of AlaCourt reflects that Rubin Lublin's other attorneys likewise appear primarily as attorneys for mortgage servicers and other claimants seeking to eject residential homeowners in Alabama from their homes following alleged nonjudicial foreclosures.

28. On information and belief, Rubin Lublin sends letters similar to Exhibit A in connection with all alleged residential mortgage defaults that it handles on behalf of its clients. *See, e.g., Barber v. Rubin Lublin*, C.A. No. 1:13-CV-975-TWT, 2013 WL 6795158,*10 (N.D. Ga. Dec. 20, 2013).

29. On information and belief, Rubin Lublin sends identical and/or nearly identical form "*Notice of Acceleration*" letters in excess of 500 times a year in its efforts to collect on debts secured by mortgage instruments. Rubin Lublin website touts its activities as regularly attempting to eject homeowners from their home on behalf of mortgage servicers in four states, the AlaCourt filings for Rubin Lublin attorneys in Alabama show that they appear frequently in such cases in Alabama, and Rubin Lublin apparently sends similar "Notice of Acceleration letters to all or many homeowners in connection with its representation of mortgage servicers. Compare Ex. A [Rubin Lublin *Notice of Acceleration* to Tim and Daphne Terry]

with *Barber v. Rubin Lublin*, C.A. No. 1:13-CV-975-TWT, 2013 WL 6795158,\*10 (N.D. Ga. Dec. 20, 2013).

30.     Rubin Lublin's website contains additional information confirming that it regularly collects or attempts to collect on residential mortgage debts on behalf of its mortgage servicer clients.  For example, at the top of its website screen, Rubin Lublin has a separate portal which lets mortgage borrowers request "reinstatement" of their mortgage loans.  *See* Ex. B [print out of Rubin Lublin website],   also   found   at   *https://rlselaw.com/practice-areas/default-lender-services/foreclosure*.  This portal is designed to allow mortgage borrowers who are in default to make a payment through Rubin Lublin in order to avoid foreclosure.

31.     In addition to its website portal, Rubin Lublin also maintains a general telephone number (1-877-813-0992) that offers an automated menu of services, including an option for borrowers to request "reinstatement information" about their mortgage loans.

32.     Finally, Rubin Lublin has previously admitted in this proceeding that its *Notice of Acceleration* to the Terrys was an effort to collect a debt.  Doc. # 11 [Motion to Dismiss Original Complaint], p. 16 (acknowledging that its conduct towards the Terrys was "the mere effort to collect a debt.").

33.     Rubin Lublin is a "debt collector" within the meaning of that term under 15 U.S.C. §1692a(6) because it uses instrumentalities of interstate commerce

and the mails to regularly collect or attempt to collect, directly or indirectly, debts owed or asserted to be owed to another through its "Notice of Acceleration" letters, which include demands for payment as alleged above, its website's portal for "reinstatement requests", its telephone line for similar collection efforts and its other activities. *See Reese*, 678 F.3d at 1218.

34.     In the alternative, Rubin Lublin is a "debt collector" within the meaning of 15 U.S.C. 1692a(6) because it regularly uses the instrumentalities of interstate commerce and/or mails in a business the principal purpose of which is the enforcement of security interests, including mortgages.

35.     In or around 2002, Plaintiffs purchased their home at 532 County Road 796, Cullman, Alabama.

36.     In connection with their home purchase, Plaintiffs took out a mortgage loan from ABN AMRO Bank.

37.     On or about March 25, 2013, Plaintiffs filed for a Chapter 13 bankruptcy in the United States District Court for the Northern District of Alabama. Their case was styled *In re: Tim and Daphne Terry*, Case No. 13-80901-CRJ13.

38.     Plaintiffs' mortgage debt was scheduled in their bankruptcy.

39.     Under Plaintiffs' Chapter 13 plan, the amounts that Plaintiffs owed to cure their pre-bankruptcy-petition mortgage arrearage ("Pre-Petition Arrearage") were paid by the trustee appointed by the bankruptcy court. The Chapter 13 plan

provided that Plaintiffs would pay their post-petition-mortgage payments directly rather than through the bankruptcy trustee.

40.     As of May 8, 2017, Plaintiff's monthly mortgage payment was $1,439.65.

41.     On or about June 16, 2017, Shellpoint became the new mortgage servicer for the Plaintiff's mortgage loan.

42.     Plaintiff's mortgage loan was in default at the time, based on both pre-petition and post-petition arrearages.

43.     On or about September 18, 2017, Shellpoint filed a Motion for Relief from the Automatic Stay in Plaintiffs' bankruptcy case.  A true and correct copy of Shellpoint's Motion is attached hereto as Ex. C.

44.     Shellpoint's Motion sought to foreclose on Plaintiffs' mortgage on the grounds that Plaintiffs had fallen behind on their post-bankruptcy-petition mortgage payments.  Ex. C.

45.     In support of its Motion, Shellpoint provided the affidavit of Shellpoint employee Sherry Goodson, who attested under oath that Plaintiff were in arrears in their post-petition mortgage payments in the amount of $9,756.98.  This amount was comprised of $8,725.98 in past due monthly mortgage payments and fees, plus an additional $1,031 in attorney's fees.  Ex. C.

46.    Shellpoint's claim for $1,031 in attorney's fees was disallowed by the bankruptcy court pursuant to the Northern District of Alabama's standing rule that no attorney's fees may be assessed if the Plaintiff has no equity in the property, reducing the amount of Plaintiffs' post-petition arrearage on their mortgage [after crediting funds in escrow] to $8,725.98.

47.    Between October and December of 2017, in addition to making their regular monthly mortgage payments, Plaintiffs cured the arrearage in their post-petition payments.  Plaintiffs' payments to Shellpoint in this timeframe were as follows:

| Amount paid by Terrys | Purpose of Payment | Date Terrys sent check | Date Shellpoint cashed check |
|---|---|---|---|
| $1,439.65 | October 2017 Mortgage Payment | October 1, 2017 | December 5,2017 |
| $2,908.66 | One-Third of Shellpoint's Allowed Post-Petition Arrearage Claim | October 13, 2017 | October 24, 2017 |
| $1,439.65 | November 2017 Mortgage Payment | November 1, 2017 | December 5, 2017 |
| $2,908.66 | One-third of Shellpoint's Allowed Post-Petition Arrearage Claim | November 10, 2017 | November 28, 2017 |
| $1,439.65 | December 2017 Mortgage Payment | December 1, 2017 | December 5, 2017 |
| $2,908.66 | One-third of Shellpoint's Allowed Post-Petition Arrearage Claim | December 4, 2017 | December 19, 2017 |

48.     Plaintiffs made the additional $8,725.98 in payments to Shellpoint as alleged in paragraph 26 in reliance on Shellpoint's sworn representation and agreement that the amount of post-petition monthly mortgage payments and fees in arrears was $8,725.98. *See* Ex. C.

49.     On December 18, 2017, the Bankruptcy Court denied Shellpoint's Motion for Relief from the Automatic Stay based on the Plaintiffs' cure of their post-petition mortgage arrearage.

50.     After curing the arrearage in their post-petition mortgage payments, Plaintiffs continued to timely make their monthly mortgage payment, including their monthly payments in January, February, March, and April of 2018.

51.     On March 5, 2018, the trustee in Plaintiffs' bankruptcy case filed a notice of final cure with the Bankruptcy Court, confirming that Plaintiffs had cured the pre-bankruptcy petition arrearage in mortgage payments as well.

52.     On or about March 6, 2018, the Bankruptcy Court discharged the Plaintiffs upon the successful completion of their Chapter 13 plan.

53.     At the time of discharge, the Terrys were current on their mortgage and no longer in default.

54.     On March 26, 2018, Shellpoint filed a response to the Trustee's March 5, 2018 notice of final cure.  Shellpoint now asserted that Plaintiffs were in arrears on their post-petition mortgage payments in the amount of $12,453.54.

55.     Shellpoint's filing included a ledger ("March 26, 2018 Ledger") that purported to reflect what Shellpoint claimed were the post-petition mortgage payments it had received from Plaintiffs.  A true and correct copy of Shellpoint's March 26 filing and ledger is attached hereto as Exhibit D.

56.     Shellpoint, however, made no attempt to explain the inconsistency between its sworn September 18, 2017 statement that Plaintiffs' had a post-petition arrearage [minus disallowed attorney's fees and crediting funds in escrow] of $8,725.98, *which Plaintiffs subsequently cured with its payments between October and December 2017*, and its March 26, 2018 claim that the Plaintiffs now had a post-petition arrearage of $12,453.54.  Nor did Shellpoint otherwise attempt to provide any basis for the new post-petition arrearage amount it claimed.  *See* Ex. D.

57.     On or about March 26 and April 18, 2018, Shellpoint returned Plaintiffs' March and April 2018 mortgage payments without cashing their checks. Shellpoint's correspondence asserted that Plaintiffs' checks were being returned because Plaintiffs were more than ninety (90) days past-due in their post-petition payments and "not in an active workout" with Shellpoint.  Shellpoint ignored the fact that the Plaintiffs had in fact cured their post-petition arrearage between October and December of 2017.

58.     On or about May 11, 2018, Plaintiffs' bankruptcy attorney contacted Shellpoint by telephone and notified it of its mistake in calculating the Plaintiffs'

post-petition arrearage.  Plaintiffs' bankruptcy counsel further confirmed Plaintiffs were ready and willing to perform on their mortgage.

59.     That same day, Plaintiffs' attorney sent correspondence to Shellpoint again notifying it of its error.  Plaintiffs' letter enclosed a copy of the September 18, 2017 affidavit that Shellpoint had filed in the Plaintiff's bankruptcy proceeding regarding the amount of the post-petition arrearage and copies of the checks that Shellpoint had received and cashed, curing that post-petition arrearage.  A true and correct copy of this correspondence [without attachments[1]] is attached hereto as Ex. E.

60.     Plaintiffs' correspondence again confirmed that Plaintiffs were ready and willing to pay their mortgage and asked that Shellpoint review the matter and get back to him to discuss as soon as possible.  Ex. E.

61.     The communications with the Terrys' attorney were placed in Shellpoint's mortgage file regarding the Terrys.

62.     The information in the communications from the Terrys' attorney were confirmed by Shellpoint's own internal records regarding payments made during the Terrys' Chapter 13 mortgage.

---

[1] Plaintiffs have omitted the attachments from this filing because they contain confidential personal information, including bank account information.  The attachments will be provided to defendant's counsel upon request and filed with the Court upon entry of an order protecting the confidential personal information from public disclosure.

63.   Shellpoint, however, ignored refused to take actions to correct the error after receiving

64.   Shellpoint never responded to this correspondence.

65.   Instead, on or about November 2, 2018, Shellpoint sent correspondence falsely claiming that Plaintiffs were in default and threatening to accelerate their mortgage.  Ex. F.

66.   This letter was sent to Plaintiffs through their attorney, Stuart Moore, because Shellpoint's file identified him as the point of contact for the Terrys.

67.   On information and belief, Shellpoint referred the matter to Rubin Lublin to attempt to collect on the Terrys' purported past due mortgage balance on or about December 31, 2018.

68.    On or about December 31, 2018, Shellpoint provided access to its mortgage file and information regarding the Terrys to Rubin Lublin.

69.   Rublin Lublin had access to the information regarding Shellpoint's error in computing amounts owed by the Terrys.  It also included information identifying the Terrys' attorney, Stuart Moore, as the point of contact for communications with the Terrys.

70.   Both immediately before and after retaining Rubin Lublin to assist it in collecting the debt allegedly owed by the Terrys, Shellpoint continued to send correspondence regarding the Terrys' mortgage to their counsel, Stuart Moore.

71.     Among other communications, Shellpoint sent a November 2, 2018 Notice of Acceleration regarding the Terrys, an additional December 17, 2018 letter, and a June 17, 2019 letter regarding the Terrys' mortgage all to the Terrys' attorney, Stuart Moore, rather than directly to the Terrys, because Shellpoint's mortgage filed continued to identify Moore as the point of contact for the Terrys.

72.     On information and belief, Rubin Lublin had access and reviewed Shellpoint's mortgage file regarding the Terrys before it sent its Notice of Acceleration to the Terrys but chose to disregard the information in the file regarding Shellpoint's mistake in declaring the Terrys in default and also the information in the file identifying the Terrys' attorney as the point of contact for all communications regarding their mortgage.

73.     In the alternative, Rubin Lublin failed to conduct any meaningful review of Shellpoint's mortgage file regarding the Terrys.  Had Rubin Lublin conducted even minimal review, it would have discovered that the Terrys had designated their attorney as their point of contact.

74.     On or about April 26, 2019, Rubin Lublin sent its "*Notice of Acceleration*" by certified mail.  Rubin Lublin's letter sought payment of the debt and threatened to conduct a foreclosure sale of Plaintiffs' residence if they did not pay up.  Ex. A [April 26, 2019 *Notice of Acceleration*].

75.     Rubin Lublin mailed the notice directly to Terrys despite the fact Shellpoint's file regarding the Terrys confirmed they were represented by an attorney and included that attorney's name and address in its file.

76.     Thereafter, on multiple occasions, including but not limited to May 17, 2019, Shellpoint and/or Rubin Lublin caused a notice to be published in The Cullman Times, a publication of general circulation in Cullman County, Alabama, falsely asserting that Plaintiffs were in default on their mortgage and that Shellpoint would be foreclosing on the property.

77.     Defendants' publication failed to disclose that any failure by Plaintiffs to pay their mortgage was the result of Shellpoint's incorrect calculation of the amount due and subsequent refusal to accept Plaintiffs' payments.

78.     On or about May 24, 2019, Plaintiffs sent a written notice of error /qualified written request ("NOE/QWR") to Shellpoint pursuant the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, *et seq.*, and its implementing regulations at 12 C.F.R. §§1024.35-36.  A true and correct copy of this notice of error/qualified written request [without attachments] is attached hereto as Ex. G.

79.     Plaintiffs also sent correspondence to Rubin Lublin, forwarding the Terrys' May 2018 letter regarding Shellpoint's miscalculation of the amount due.

80.     Rubin Lublin canceled the planned nonjudicial foreclosure based on that correspondence.

81.     On or about June 12, 2019, Shellpoint responded to Plaintiffs' NOE/QWR, denying that it had made any error in the servicing of Plaintiffs' mortgage loan and again asserting that Plaintiffs were more than 90 days past due when it began refusing their payments.  A true and correct copy of Shellpoint's June 12, 2019 Response and Ledger is attached hereto as Exhibit H.

82.     Shellpoint's letter acknowledges that it is acting as a debt collector and that its letter is an attempt to collect a debt.  Ex. H.

83.     Shellpoint's correspondence also included a new ledger identifying what Shellpoint claimed were the post-petition mortgage payments it had received from Plaintiffs.  Ex. H ("June 12, 2019 Ledger").

84.     Shellpoint's June 12, 2019 response continues to fail to address the inconsistency between September 18, 2017 sworn representation/promise as to the amount of Plaintiffs' post-petition arrearage and the $12,453.54 amount that Shellpoint started trying to claim in March of 2018.

85.     Moreover, the June 12, 2019 Ledger of Plaintiffs' alleged post-petition payments that Shellpoint included with its Response to Plaintiffs' NOE/QWR reflects multiple inconsistencies with the March 26, 2018 Ledger that Shellpoint submitted in its filing to the Bankruptcy Court, including the omission of multiple payments that Shellpoint had previously admitted receiving from Plaintiffs. Compare Ex. C [Shellpoint March 26, 2018 ledger submitted to bankruptcy court]

with Ex. H [Shellpoint June 12, 2019 ledger prepared in response to May 24, 2019
NOE/QWR].

86.    Shellpoint failed to conduct a reasonable investigation in responding to
Plaintiffs' May 24, 2019 NOE/QWR, as confirmed by the inconsistencies between
its June 12, 2019 and March 26, 2018 Ledgers, failed to include the information
requested in Plaintiffs' NOE/QWR, and/or failed to cure Shellpoint's error.

87.    Shellpoint does not have accurate internal records of the payments
received from Plaintiffs.   Shellpoint's inaccurate records regarding Plaintiffs is
consistent with a pattern and practice by Shellpoint of mishandling loans transferred
from other servicers.

88.    Plaintiffs have been harmed by Shellpoint's failure to fix the errors
identified in Plaintiffs' NOE/QWR.    Among other things, Plaintiffs have
subsequently been forced to incur additional expense as a result of Shellpoint
inadequate investigation and deficient response to their NOE/QWR, including
attorneys' fees and other costs.

89.    In addition, Plaintiffs have been deprived of funds by Shellpoint's
failure to correct its error and properly credit their account, have fallen further
behind in their mortgage as a result of Shellpoint's continuing failure to resolve this
issue and refusal of their monthly mortgage payments, have suffered the imposition
of additional fees, and have suffered additional stress, marital discord, and mental

anguish as a result of being forced to file this litigation, having Shellpoint's threats of foreclosure hanging over them, and continuing to face financial ruin despite their attempt to obtain a fresh start through the successful completion of their Chapter 13 bankruptcy.

90.     Moreover, Plaintiffs do not owe the debt claimed by Shellpoint and/or Rubin Lublin or do not owe the amounts claimed.

91.     Plaintiffs have been damaged as a result of Defendants' wrongful acts and omissions described above.  Those damages include, but are not limited to, the invasion and interference with Plaintiffs' right to be free from abusive debt collection practices, causing Plaintiffs anger, anxiety, fear, and other mental anguish, damaging Plaintiffs' marriage, various costs and expenses incurred as a result of or in response to the Defendants' wrongful acts, including costs, impairment of Plaintiff's construction business by statements which diminish his creditworthiness, and being deprived of the financial fresh start they attempted to obtain through the successful completion of their Chapter 13 bankruptcy.

92.     At all times pertinent to the allegations of this Complaint, Defendants acted by and through their duly authorized agents, employers, servants, attorneys, or other legal representatives, all of whom acted within the line and scope of such agency, employment, service, or representative capacity.    Alternatively, the Defendants adopted, affirmed, and /or ratified the acts or omissions of their agents,

servants, employees, attorneys, or legal representatives as its own with regard to the allegations of this complaint.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §1692 *ET SEQ.*

### [Shellpoint Mortgage Servicing]

93.    Defendant   Shellpoint   used   false,   deceptive,   and   misleading representations in an attempt to collect a purported debt from Plaintiff in violation of  15  U.S.C.  §1692e,  including  false  representations  regarding  the  character, amount or legal status of the debt in violation of §1692e(2)(A), threatening to take any  action  that  could  not  be  taken  in  violation  of  §1692e(2)(5),  and/or communicating to any person credit information which is known or which should be known to be false, including that the disputed debt is disputed in violation of §1692e(2)(8).

94.    Shellpoint's    misrepresentations    and    false    or    misleading communications, as reflected, among other pleadings and correspondence, in its November 2018 notice of default and its June 2019 letter to the Terrys' counsel include, but are not limited to: (1) that Plaintiffs were arrears in their post-petition debts, (2) that Plaintiffs were arrears in their post-petition debts in the amount(s) claims by Shellpoint, (3)   Plaintiffs were in default on their mortgage, (4) that Shellpoint was legally entitled to declare the loan in default, accelerate the Terrys'

22

mortgage loan, and foreclose on the Terrys' property, (5) that Shellpoint was entitled to accelerate Plaintiffs' mortgage debt and/or foreclosure despite the fact any default was the result of Defendants' misrepresentations and/or other wrongful conduct, (6) publishing that the Terrys were in default in the Cullman Times without including that the alleged debt was disputed, and/or (7) falsely claiming that Plaintiffs had not made certain payments despite the fact those payments had been received by Defendant Shellpoint and were reflected in its records.

95.    Defendant Shellpoint was aware of the falsity of its statements based on its review of the information in its mortgage file, including the pleadings made and received by Shellpoint in connection with the Terrys' bankruptcy, and also the telephone call and correspondence from the Terrys' attorneys.

96.    Defendant's conduct identified above violated the applicable provisions of the FDCPA, including 15 U.S.C. §1692e.

97.    Shellpoint used unfair and/or unconscionable means in an attempt to collect the alleged debt from Plaintiff in violation of 15 U.S.C. 1692f, including 1692f(1) and 1692f(6).

98.    Shellpoint's unfair and/or unconscionable acts include, but are not limited to, (1) attempting to collect fees, charges, or other expenses incidental to the principal obligation that are prohibited by law, (2) using the threats of foreclosure to collect amounts claimed by Shellpoint while ignoring the information in the Terrys'

mortgage file reflecting that the Terrys were not in default and that the alleged non-payment of the Terrys' mortgage was the result of Shellpoint's mistake in calculating the amounts due, (3) refusing Plaintiffs' monthly mortgage payments based on false and inaccurate information and then using its own improper refusal to accept those payments to purportedly accelerate the loan and attempt to foreclose on Plaintiffs' property, (4) failing to respond to Plaintiff when provided documentation explaining Defendant Shellpoint's error and instead attempting to accelerate the loan and foreclose, (5) taking and/or threatening to take nonjudicial action to effect dispossession of property when there was no present right to possession of the property through an enforceable security interest, and/or (6) threatening to take nonjudicial action to effect dispossession of the property when the property is exempt by law from such dispossession.

99.    Defendant's conduct identified above violated the applicable provisions of the FDCPA, including 15 U.S.C. §1692f.

100.    Defendant's violations detailed above were done intentionally and with knowledge.

101.    As a result of the Shellpoint's violations of the FDCPA, Plaintiff has been damaged as described above, including mental anguish and marital discord. Plaintiff is entitled to statutory damages, actual damages, and all costs and reasonable attorney's fee pursuant to the relevant provisions of the FDCPA.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. §1692 *ET SEQ.*

### [Rubin Lublin, LLC]

102. Defendant Rubin Lublin used false, deceptive, and misleading representations in an attempt to collect a purported debt from Plaintiff in violation of 15 U.S.C. §1692e, including false representations regarding the character, amount or legal status of the debt in violation of §1692e(2)(A), threatening to take any action that could not be taken in violation of §1692e(2)(5), and/or communicating to any person credit information which is known or which should be known to be false, including that the disputed debt is disputed in violation of §1692e(2)(8).

103. Rubin Lublin's misrepresentations and false or misleading communications, as contained in its April 2019 correspondence to the Terrys include: (1) that Plaintiffs were in default on their mortgage, (2) that Rubin Lublin was legally entitled to declare the loan in default, accelerate the Terrys' mortgage loan, and foreclose on the Terrys' property, and/or (3) that Rubin Lublin was entitled to accelerate Plaintiffs' mortgage debt and/or foreclosure despite the fact any purported default was the result of Shellpoint's breach and/or other improper conduct. In addition, Rubin Lublin published that the Terrys were in default in The Cullman Times without including that the alleged debt was disputed.

104.   Defendant Rubin Lublin was aware of the falsity of its statements based on its review of the mortgage file information provided by Shellpoint, including the telephone call and correspondence from the Terrys' attorney and the pleadings made and received by Shellpoint in connection with the Terrys' bankruptcy.

105.   In the alternative, Rubin Lublin violated 15 U.S.C. §1692e(10) by sending its April 2019 collection letter to the Terrys, directly or indirectly seeking collection of an incorrect balance and/or falsely asserting that it was legally entitled to accelerate their loan and foreclose on their property, without any meaningful attorney investigation or review of the Shellpoint's file regarding the Terrys. *See Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assoc., P.C.*, 114 F.Supp.3d 1342, 1367 (N.D. Ga. 2015).

106.   Rubin Lublin used unfair and/or unconscionable means in an attempt to collect the alleged debt from Plaintiff in violation of 15 U.S.C. §1692f by using the threats of foreclosure to collect amounts claimed by Shellpoint while ignoring the information in the Terrys' mortgage file reflecting that the Terrys were not in default and that the alleged non-payment of the Terrys' mortgage was the result of Shellpoint's mistake in calculating the amounts due.

107.   Defendant Rubin Lublin violated 15 U.S.C. §1692c(2) by contacting Plaintiffs directly in connection with its collection efforts when it knew Plaintiffs were represented by counsel based on the records it received from Shellpoint.

108.   In the alternative, in the event it is determined that Rubin Lublin is a debt collector under 15 U.S.C. §1692(b)(6) only as an enforcer of security interests, Rubin Lublin violated §1692f(6) by threating to take a nonjudicial action to effect dispossession or disablement of property when there was no present right of possession.

109.   There was no present right of possession under Alabama law because the Terrys were not in default and/or because Rubin Lublin's claim for possession was premised on Shellpoint's breach of contract in refusing to accept the Terrys' mortgage payments.

110.   Defendant's violations detailed above were done intentionally and with knowledge.

111.   As a result of the defendants' violations of the FDCPA, Plaintiff has been damaged as described above, including mental anguish and marital discord. Plaintiff is entitled to statutory damages, actual damages, and all costs and reasonable attorney's fee pursuant to the relevant provisions of the FDCPA.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE REAL ESTATE SETTLEMENT

## PROCEDURES ACT

### [Shellpoint Mortgage Servicing]

112.   Shellpoint is a servicer within the meaning of 12 U.S.C. 2605(i)(2).

113.   Plaintiffs' loan with Shellpoint is a federally related mortgage loan.

114.   Plaintiffs' May 24, 2019 letter was a Qualified Written Requests and Notice of Error within the meaning of 12 U.S.C. §2605(e)(B), 12 C.F.R. §1024.35, and 12 C.F.R. §1024.36.

115.   Shellpoint breached its obligations under 12 U.S.C. §2605(e)(B) in responding to these NOE/QWRs.   Among other things, it failed to conduct a reasonable investigation of Plaintiffs' notice of error, failed to either make the appropriate corrections on Plaintiffs' account within thirty business days of receipt or to provide an explanation of its reasons why its account was correct, and failed to provide the documents, if any, that provided the basis for its determination.

116.   Shellpoint's actions and omissions, including those described above, violated Plaintiffs' rights under 12 U.S.C. §2605.

117.   Shellpoint committed multiple violations in responding to Plaintiffs' NOE/QWR, including failing to conduct a reasonable investigation, failing to cure, and failing to either provide the information requested or explain that the information was unavailable.

118.   Plaintiffs have suffered actual damage as a result of these violations as more particularly described above.

119.   On information and belief, Shellpoint has a pattern and practice of failing to investigate errors reported by borrowers, and/or mishandling loans after those loans are transferred from other servicers such as Plaintiffs, and/or claiming debts after they have been discharged in bankruptcy.

120.   On information and belief, for example, Shellpoint settled similar allegations of misconduct asserted by the State of Massachusetts in violation of state law in 2018.

## FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT/PROMISSORY ESTOPPEL/ EQUITABLE ESTOPPEL

[Shellpoint Mortgage Servicing]

121.   Shellpoint's September 2017 statement of the amount due and Plaintiffs' acceptance of that statement and payment of the amounts claimed constitutes a contract as to the post-petition arrearage.

122.   Shellpoint breached that contract by claiming additional amounts due after Plaintiffs paid the amounts agreed.

123.   Plaintiffs have been damaged as a result.

124.    In the alternative, Shellpoint's September 2017 statement constituted a promise and/or representation as to the amount of the post-petition arrearage owed by Plaintiffs.

125.    In the alternative, Shellpoint's September 2017 statement of the amount due and Plaintiff repaid the amount claimed became res judicata and/or collateral estoppel when the bankruptcy court ruled on that claim, discharged Plaintiffs after the successful completion of their Chapter 13 plan, entered its discharge injunction, and dismissed the bankruptcy case.

126.    When Shellpoint communicated this information, Shellpoint was aware of its prior representations and the true amounts due on the Terrys' mortgage.

127.    Plaintiffs relied on Shellpoint's representation/promise.  Among other things, Plaintiffs paid the arrearage amount claimed by Shellpoint between October and December of 2017 in an effort to cure the arrearage and did not challenge the amount claimed by Shellpoint.

128.    Plaintiffs' payment of the additional amounts during the course of their bankruptcy proceeding and while making their regular mortgage payments, their Chapter 13 payments, and their other regular expenses, constituted a substantial burden but Plaintiffs incurred this burden in belief that it would bring their mortgage current.

129.   A substantial injustice would occur if Shellpoint were permitted to represent the amounts of the post-petition arrearage, have Plaintiffs rely on that amount and pay it over to Shellpoint in an effort to save their home, and Shellpoint were then allowed to renege on its promise, claim additional amounts, and/or take Plaintiffs' home.

130.   Shellpoint's attempts to claim additional and/or other amounts and/or to foreclose based on that amount is barred by equitable, promissory, and/or judicial estoppel.

131.   In the alternative, Shellpoint's attempts to collect the additional amounts and/or to foreclose on Plaintiffs' home based on those claims amounts was barred by the Bankruptcy Court's discharge injunction.

### FIFTH CAUSE OF ACTION
### DEFAMATION

[Both Defendants]

132.   Rubin Lublin, as agent for Shellpoint, published false, libelous, and defamatory statements concerning Plaintiffs, including false statements concerning their payment of debts, in The Cullman Times.

133.   The Defendants did so maliciously, with knowledge of their falsity, negligently, and/or with wanton and reckless disregard for the truth or falsity of their statements.

31

134.   Defendants knew or should have known of the falsity of their publication based upon (1) Shellpoint's own records, including the affidavit of its employee Sherry Goodson, the Terrys' subsequent payments, and the Bankruptcy Court's denial of Shellpoint's motion to lift automatic stay, and/or (2) communications from the Terrys and/or their attorney with the Defendants, including the May 11, 2018 telephone call and letter.

135.   The Defendants either reviewed the records in the Terrys' mortgage file and published the information with knowledge of its falsity or they failed to review Shellpoint's mortgage file for the Terrys and published the information with either a negligent or wanton and reckless disregard for the truth or falsity of their statements.

136.   Plaintiffs have been damaged as a result of Defendants' false statements, including harm to his reputation among her peers and in his community, with Plaintiff's employer, loss of potential business, including construction work, because Defendants' publication impaired his creditworthiness, and such other damages as described above.

## SIXTH CAUSE OF ACTION
## INVASION OF PRIVACY

### [Both Defendants]

137.   Rubin Lublin's conduct, as agent for Shellpoint conduct, as alleged above, including its publication regarding Plaintiffs in the Cullman Times, have painted Plaintiffs in a false light in the public eye.

138.   The false information that Defendants published about Plaintiffs in the Cullman Times was communicated to so many persons in Plaintiffs' community to ensure that it would become one of general public knowledge.

139.   Defendants knew or should have known of the falsity of their publication based upon (1) Shellpoint's own records, including the affidavit of its employee Sherry Goodson, the Terrys' subsequent payments, and the Bankruptcy Court's denial of Shellpoint's motion to lift automatic stay, and/or (2) communications from the Terrys and/or their attorney with the Defendants, including the May 11, 2018 telephone call and letter.

140.   The Defendants either reviewed the information in Shellpoint's file for the Terrys' mortgage and published the information with knowledge of its falsity or they failed to review Shellpoint's mortgage file for the Terrys and published the information with either a negligent or wanton and reckless disregard for the truth or falsity of their statements.

141.   Defendants actions in placing Plaintiffs in a false light in the public eye were made with either knowledge of, or wanton and reckless disregard, as to the

falsity of the publicized matter and the false light in which Plaintiffs would be placed.

142.   Plaintiffs have been have been damaged by Defendants' invasion of their privacy, including, but not limited to, those damages described above.

## SEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT

### [Shellpoint Mortgage Servicing]

143.   Plaintiffs have made payments to Shellpoint that it has kept but failed to properly credit.

144.   Defendant Shellpoint has been unjustly enriched as a result.

145.   In the alternative, Plaintiffs made payments to Shellpoint in reliance on its representation as to the amount due.  Shellpoint has retained those payments but failed to credit Plaintiffs for curing their post-petition arrearage and subsequently refused to accept their payments and sought to foreclose on Plaintiffs.

146.   Shellpoint has been unjustly enriched by its conduct as described above.

## EIGHTH CAUSE OF ACTION
## DECLARATORY AND INJUNCTIVE JUDGMENT

### [Both Defendants]

147.   Defendants currently claim an arrearage in excess of $34,000. This is the direct result of Shellpoint's mistaken and improper claim that there was a post-

petition arrearage after the bankruptcy court determined it was cured and then improper refusal to accept Plaintiffs' monthly mortgage payments.

148.   Plaintiffs seek declaratory and injunctive relief that (1) there was no post-petition arrearage in March of 2018 as determined by the bankruptcy court, (2) that it was improper for Defendants to claim that there was a post-petition arrearage after it was cured and then refuse Plaintiffs' monthly mortgage payments, and (3) the amounts refused between March of 2018 and the date Shellpoint begins to accept payments are either waived or can be paid at the end of the mortgage.

149.   Defendant Shellpoint has purported to exercise or threatens to exercise the due on sale clause in Plaintiffs' mortgage based on the deficiency created by Shellpoint's wrongful conduct.

150   Defendant Shellpoint has indicated that it still intends to use Defendant Rubin Lublin to foreclose.   Ex. H [June 12, 2019 Response to Qualified Written Request].

151.   Under Alabama law, a court has equitable jurisdiction over the exercise of a due on sale clause and may enjoin enforcement of such clauses where it would be unconscionable or inequitable to exercise such clauses.   *See In re: Parks*, 193 B.R. 361 (Bankr. N.D. Ala. 1995); *Powell v. Phenix Federal Savings and Loan Assoc.*, 434 So.2d 247 (Ala. 1983).

152.   Plaintiffs seek declaratory relief that (1) Shellpoint's exercise of the due on sale clause based on its own misconduct would be inequitable and an order enjoining Shellpoint from exercising that provision of the mortgage based upon its miscalculation of the amounts due on the mortgage and (2) that Rubin Lublin's nonjudicial foreclosure on the Terrys' home based upon Shellpoint's own misconduct and mistakes would be improper and enjoining any such conduct.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, awarding the following relief:

A.   Actual, compensatory and consequential damages, including mental anguish damages, in such an amount as the trier of fact determines;

B.   Statutory damages pursuant to 15 U.S.C. §1692 *et seq* and/or 12 U.S.C. 2605(f);

C.   Punitive damages in such amount as the trier of fact determines;

D.   Such interest as allowed by law;

E.   The costs of this suit, including plaintiff's reasonable attorney's fee;

F.   Declaratory judgment injunctive relief that the amount of the post-petition arrearage was the amount stated in Shellpoint's September 2017 bankruptcy filing minus the attorney's fees disallowed in the bankruptcy court and injunctive relief prohibiting Defendant Shellpoint from exercising the due-on-sale clause in the Terrys' mortgage; and,

G.   Such additional relief as the Court deems just and equitable.

Respectfully submitted,

*/s/ Matt Carroll*
One of the Attorneys for Plaintiffs
Tim and Daphne Terry.

**OF COUNSEL:**

F. Inge Johnstone
Matt Carroll
JOHNSTONE CARROLL LLC
One Independence Plaza Drive, Suite 520
Homewood, Alabama 35209
Telephone: 205-383-1372

## JURY DEMAND

PLAINTIFFS DEMAND TRIAL BY STRUCK JURY FOR ALL CLAIMS SO TRIABLE.

/s/ Matt Carroll
One of the Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2019, a true and correct copy of the foregoing was served on all parties of record via CM/ECF as follows:

Timothy Pittman
Rubin Lublin, LLC
200 Clinton Avenue West, Suite 406
Huntsville, AL 35801

Grant Premo
Bradley, Arant, Boult, Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203

/s/ Matt Carroll
One of the Attorneys for Plaintiffs