IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DVISION

| | |
|---|---|
| TIM and DAPHNE TERRY, | |
| Plaintiffs, | |
| v. | Case No. 5:19-cv-01246-LCB |
| NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, and RUBIN LUBLIN, LLC, | |
| Defendants. | |

## RUBIN LUBLIN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DIMSISS

COMES NOW, Rubin Lublin, LLC ("Rubin Lublin"), a Defendant in the above-styled civil action, and pursuant to Fed. R. Civ. P. 12(b)(6), files this Memorandum of Law in Support of its Motion to Dismiss. For the reasons set forth below, Rubin Lublin respectfully submits that Plaintiffs' Claims in Count 5 for Defamation, Count 6 for Invasion of Privacy, and Count 8 for Declaratory and Injunctive Relief fails to state a claim upon which relief may be granted and should be dismissed as to Rubin Lublin.

### STATEMENT OF FACTS

This case is primarily a dispute over mortgage payments between the Plaintiffs and Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing

1

("Shellpoint"). The property at issue is located at 532 County Road 796, Cullman, Alabama 35055 (the "Property"). [Doc. 21, ¶ 35]. According to the Plaintiffs, in connection with their purchase of the Property, they obtained a mortgage loan from ABN AMRO Bank around 2002. [Doc. 21, ¶¶ 35-36]. Shellpoint is the current servicer of Plaintiffs' mortgage. *Id.* at ¶ 41. The Plaintiffs previously filed for Chapter 13 bankruptcy and outline an alleged payment dispute between them and Shellpoint. In short, the Plaintiffs contend that they were current on their mortgage when they exited bankruptcy in March 2018, and Shellpoint says they were not. *See id.* at ¶¶ 50-55.

Shellpoint allegedly stopped accepting the Plaintiffs' monthly mortgage payments in March and April 2018 "because Plaintiffs were more than ninety (90) days past-due in their post-petition payments and 'were not in active workout' with Shellpoint." *Id.* at ¶ 57. On "November 2, 2018, Shellpoint sent correspondence to Plaintiffs' attorney claiming that Plaintiffs were in default and threatening to accelerate their mortgage." *Id.* at ¶ 65. Shellpoint then retained the firm of Rubin Lublin to conduct a non-judicial foreclosure, and "[o]n or about April 26, 2019, the law firm of Rubin Lublin sent its '***Notice of Acceleration***' by certified mail" and the Plaintiffs complain that this notice was "sent directly to [them] despite the fact Shellpoint's file regarding [them] confirmed they were represented by an attorney." *Id.* at ¶¶ 67, 74-75.

Thereafter, "Shellpoint and/or Rubin Lublin caused a notice to be published in The Cullman Times, a publication of general circulation in Cullman County, Alabama, falsely asserting that Plaintiffs were in default on their mortgage and that Shellpoint would be foreclosing on the property." *Id.* at ¶ 76. As of this date, no foreclosure sale has taken place. *See* [Doc. 1-5] at p. 2 (letter from Shellpoint cancelling foreclosure sale). Based on these allegations, the Plaintiffs bring the following claims against Rubin Lublin: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; (2) defamation; (3) invasion of privacy; and (4) declaratory and injunctive relief. However, the facts pleaded do not state a claim upon which relief can be granted and Plaintiff's claims for defamation, invasion of privacy, and declaratory and injunctive relief should be dismissed as to Rubin Lublin.

## ARGUMENT AND CITATION OF AUTHORITY

**A.   STANDARD OF REVIEW**

This Court should dismiss a compliant pursuant to Fed. R. Civ. P. 12(b)(6) if it does not state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In considering a

motion to dismiss, the Court must treat all well-plead allegations of the complaint as true. *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

B.   **THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR DEFAMATION**

Plaintiffs attempt to bring a variety of state law claims against Rubin Lublin all stemming from the alleged errors made during Shellpoint's servicing of the loan at issue. First, Plaintiff allege that "Rubin Lublin, as agent for Shellpoint, published false, libelous, and defamatory statements concerning Plaintiffs including false statements concerning their payment of debts, in the Cullman Times." [Doc. 21, ¶ 134]. "There are two types of defamation: libel, which involves the use of print media to publish the defamatory comment, and slander, which involves the oral expression of a defamatory comment." *Adams v. Bank of Am., N.A.*, 237 F. Supp. 3d 1189, 1202 (N.D. Ala. 2017), appeal dismissed sub nom. *Adams v. Bank of Am., NA*, 17-12172-FF, 2018 WL 2229331 (11th Cir. Mar. 15, 2018) (quoting *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999)).

"Whether proceeding under a theory of libel or slander, the elements of a cause of action for defamation are the same: '1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.'" *Adams*, 237 F. Supp. 3d at 1202 (quoting *Wal–Mart Stores, Inc. v. Smitherman,* 872 So.2d 833, 840 (Ala. 2003)). "Special damages are the material harms that are the intended result or natural consequence of the [defamatory] statement, and the general rule is that they are limited to 'material loss capable of being measured in money.'" *Shook v. St. Bede Sch.*, 74 F. Supp. 2d 1172, 1180 (M.D. Ala. 1999)(internal citations omitted); *See Jackson v. Bank of N.Y. Mellon*, No. 16-062-CG-M, 2016 WL 4942085, at *11 (S.D. Ala. July 19, 2016) (citations omitted).

In order to state a claim, a plaintiff "must provide facts supporting the assertion that the publication was made either (1) actionable irrespective of special harm or (2) resulted in special harm." *Id.* "As opposed to slanderous statements, libelous statements are actionable *per se*, without a showing of special damages, 'if they directly tend to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood.'" *Rice v.*

5

*Seterus, Inc.*, No. 7:17-cv-00732-RDP, 2018 WL 513345, at *8 (N.D. Ala. Jan. 23, 2018) (quoting *Kelly v. Arrington*, 624 So.2d 546, 549 (Ala. 1993)).

Here, the Plaintiffs' claim fails for several reasons. First, they have not alleged in any respect that Rubin Lublin was at all negligent in publishing the notice of foreclosure. Plaintiffs attempt to impute upon Rubin Lublin some negligence based upon a claim that they failed to adequately review an entire mortgage file to discover previous disputes between Plaintiffs and Shellpoint regarding their loan amount. [Doc. 21, ¶¶ 134-135]. However, Plaintiffs fail to identify any actual duty Rubin Lublin had to review a May 11, 2018 call and letter that would alert them that Plaintiffs disputed the amount due as alleged in Paragraph 134.

Second, the Plaintiffs have not alleged any facts showing that this is a case where libel per se can apply and have not set forth facts showing that they suffered any special damages. The Amended Complaint only says that "Plaintiffs have been damaged as a result, including harm to his reputation among her peers and in his community [*sic*], with Plaintiff's employer, loss of potential business, including construction work, because Defendants' publication impaired his creditworthiness, and such other damages as described above." [Doc. 21] at ¶ 136. These are conclusions not entitled to be treated as true, and so are the "other damages as described above," which are those set forth in conclusory terms in Paragraph 91, as

6

described herein. Even Plaintiffs allegations regarding damage to creditworthiness are couched as conclusions. Plaintiffs have claimed harm to reputation, potential business, and creditworthiness. [Doc. 21] at ¶ 136.

Plaintiffs' fail to articulate how damage to Plaintiff's reputation with his employer occurred as a result of impaired creditworthiness or what business specifically was damaged and how Plaintiffs individual creditworthiness influenced the decisions of potential clients. *Id.* While Plaintiffs allege damage to reputation and creditworthiness, "they [have not] pleaded that the damage to their credit had monetary effects." *Hearn v. U.S. Bank, N.A.*, 6:16-CV-01579-LSC, 2017 WL 11442128, at *3 (N.D. Ala. July 12, 2017). Rather, Plaintiffs rely on the conclusory statement that damage has occurred and the assumption it may have been monetary. In allegations of economic damages, "[a]ny allegation of loss in general terms is not sufficient ... it is necessary to allege the facts which show wherein the plaintiff has sustained damage ... [and] it is essential that such damage be distinctly and particularly set out." *Hearn v. U.S. Bank, N.A.,* 6:16-CV-01579-LSC, 2017 WL 11442128, at *3 (N.D. Ala. July 12, 2017); *quoting Ebersole v. Fields,* 62 So. 73, 75 (Ala. 1913).

In *Perry v. Matrix Financial Services Corp.*, the court noted that while it was a close call, the allegation that Perry owned a cleaning service, which lost clients because of the foreclosure notices, causing an income loss for the business.

*Perry v. Matrix Fin. Servs. Corp.*, 2:18-CV-01845-JEO, 2019 WL 1597883, at *13 (N.D. Ala. Apr. 15, 2019). Plaintiffs Amended Complaint lacks any of the specificity found in *Perry*. Plaintiffs' Amended Complaint lacks the required material harms for special damages, instead relying on claimed damages to reputation and potential losses. However, special damages as a general rule "are limited to 'material loss capable of being measured in money.'" *Shook v. St. Bede Sch.*, 74 F. Supp. 2d 1172, 1180 (M.D. Ala. 1999). An allegation that impaired creditworthiness damages Plaintiff's reputation with his employer leading to a loss of potential business, fails to rise to rise to the level of a material loss measured in money.

Emotional distress, disgrace, ridicule, and contempt are not special damages, nor have the Plaintiffs' pled proof of special damages beyond the conclusory statement that a damage to reputation may have led to a reduction in potential construction business. [Doc. 21] at ¶ 136. The term "potential business" in and of itself lends itself to a nebulous concept that is not able to be concretely measured in money as anticipated in *Shook*. Because the Plaintiffs have failed to allege that Rubin Lublin was negligent, that the publication qualifies as libel per se, and failed to plead facts showing special damages, their defamation claim fails and should be dismissed.

## C.  THERE IS NO VIABLE CLAIM FOR INVASION OF PRIVACY

The Sixth Cause of Action is titled "invasion of privacy" and focuses on the foreclosure advertisement that was published in The Cullman Times. "Under Alabama law, invasion of privacy in the context of a creditor's actions towards a debtor is 'the wrongful intrusion into one's private activities in such manner as to outrage our cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Erdberg v. Five Bros. Mortg. Co. Servs. & Securing, Inc.*, No. 2:16-CV-01880-SGC, 2019 WL 995888, at *7 (N.D. Ala. Mar. 1, 2019) (quoting *Liberty Loan Corp. of Gadsden v. Mizell,* 410 So. 2d 45, 47 (Ala. 1982)).   In   the mortgage servicing context, courts have only recognized this cause of action "for 'hounding the plaintiff,' [cit] . . . with 'repeated conduct equating deliberate harassment or systemic campaigns designed to vilify the debtor or expose him to public ridicule.'" *Id.* (citations omitted).

> "The mere effort ... to collect a debt cannot without more be considered a wrongful and actionable intrusion." *Norris v. Moskin Stores, Inc.*, 132 So. 2d 321, 323 (Ala. 1961). "[T]he Alabama Supreme Court has 'recognized the right of a creditor to take reasonable action to pursue a debtor and collect a debt.' " *Shuler v. Ingram & Assocs.,* 441 F. App'x 712, 720 (11th Cir. 2011) (quoting *Jacksonville State Bank v. Barnwell,* 481 So. 2d 863, 865 (Ala. 1985) ). Moreover, "efforts to collect a debt may be annoying, embarrassing, and upsetting without rising to the level of an invasion of privacy." *Leahey v. Franklin Collection Serv.*, 756 F. Supp. 2d 1322, 1327-28 (N.D. Ala. 2010).

*Id.* This is true even when the loan is not in default, as the Plaintiffs have alleged here. *See, e.g., Westbrook v. NASA Fed. Credit Union*, No. 3:17-cv-00534-AKK, 2018 WL 2065008, at *3 (N.D. Ala. May 3, 2018).

Here, the Plaintiffs have not alleged that they were hounded by Rubin Lublin and allege receiving only one letter and the publishing foreclosure advertisement. This is nothing more than the mere effort to collect a debt and is not actionable under Alabama law. Additionally, the Plaintiffs have again pleaded only conclusory statements in support of their damages. *See* [Doc. 1, ¶ 142]. They have failed in all respects to state a claim for invasion of privacy and the claim should be dismissed.

**D.   COUNT EIGHT IS NOT TRULY DIRECTED AT RUBIN LUBLIN**

In the final claim in the Amended Complaint, the Plaintiffs seek declaratory and injunctive relief concerning the status of their loan (i.e., whether it is in default). Although the caption of the claim says it is against all Defendants, the substance of the claim names only Shellpoint. Specifically, Plaintiffs seek a declaration that there was no arrearage due in March of 2018; that Shellpoint's actions in claiming an arrearage after the alleged cure were improper; and that the amounts refused by Shellpoint should be waived or paid at the end of the mortgage. [Doc. 21, ¶ 148]. Plaintiffs further seek to enjoin Shellpoint's future attempts at foreclosure. [Doc. 21, ¶¶ 149-150].

In fact, the Plaintiffs make explicit requests for relief almost exclusively as to Shellpoint. *See* [Doc. 21, ¶¶ 148-152]. The only mention of Rubin Lublin is the fact that it has been engaged as foreclosure counsel. [Doc. 21, ¶¶ 150, 152]. This makes sense, as Shellpoint is the creditor against whom such relief is appropriate. Rubin Lublin would not be the appropriate party to litigate this claim. Therefore, Rubin Lublin requests that this claim should be dismissed as Rubin Lublin.

## CONCLUSION

For the reasons stated above, Rubin Lublin respectfully requests that this Court Dismiss Plaintiffs' Counts 5, 6, and 8 as to Rubin Lublin.

Respectfully submitted, on November 26, 2019.

>  */s/ Timothy P. Pittman*
>  Timothy P. Pittman (ASB-0075-I51P)
>  **RUBIN LUBLIN, LLC**
>  200 Clinton Avenue West, Suite 406
>  Huntsville, AL 35801
>  Tel:   (678) 281-2972
>  Fax:   (404) 601-5095
>  tpittman@rubinlublin.com
>
>  *Attorney for Rubin Lublin, LLC*

## **CERTIFICATE OF SERVICE**

I, Timothy P. Pittman, certify that on November 26, 2019, a true and correct copy of the foregoing was served upon all parties as follows via CM/ECF:

F. Inge Johnstone
Matt Carroll
**JOHNSTONE CARROLL LLC**
One Independence Plaza Drive, Suite 520
Homewood, Alabama 35209

*/s/ Timothy P. Pittman*
Timothy P. Pittman (ASB-0075-I51P)